PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* EMILIO COTIS, Defendant and Appellant.

No. 5875. Argued May 5, 1936.—Decided July 28, 1936.

*Miguel A. García Méndez* for appellant. *R. A. Gómez, Prosecuting Attorney,* and *Luis Janer, Assistant Prosecuting Attorney,* for appellee.

MR. CHIEF JUSTICE DEL TORO delivered the opinion of the Court.

The District Attorney of Mayagüez accused Emilio Cotis and Juan Casiano of the crime of adulterating milk, committed in San Germán on November 27, 1934, in transporting adulterated cow's milk for human consumption.

The defendant Cotis pleaded not guilty and the trial having been held, the court on March 7, 1935, sentenced him to pay a fine of $25. He appealed to this Court and assigns as errors the dismissal of his motion for nonsuit and the pronouncement of the judgment of conviction without evidence to uphold it and contrary to the decisions of this Supreme Court.

At the beginning of the trial both parties stipulated that if the chemist of the Board of Health were called, "he would testify that a sample of milk that was sent to him in the month of November or December 1934, marked with the initials A. B. No. 47, was examined by him, and that the same was found to be adulterated with 46 per cent of water artificially added."

The testimony of Arturo Benavent was then heard. Examined by the District Attorney he answered that on No-

vember ·27, 1934, he was engaged in taking samples of milk as employee of the Department of Health in the Municipality of San Germán, and that he went to the milk-stall of Conchita Montalvo and saw the defendant arrive from 7 to 8 at night in the delivery wagon of the Blue Ribbon Dairies; that he stopped the defendant while the latter was unloading the milk cans from the wagon and told him that he needed some samples of the milk to send them to the Department of Health. With defendant's consent witness opened the cans and took three samples of milk, one of which was delivered to the defendant, another was sent to the Department and the third sample was kept in his office, all being marked A. B. No. 47.

Cross-examined by counsel for the defendant, the witness answered that the defendant drove the milk wagon and that he did not remember whether anyone else was in charge of the transportation; that he stopped in front of the milk-stall; that the milk cans were absolutely locked and sealed and that the witness does not know who locked them; that they had the customary tag of the dairy from where they were brought; that he was absolutely certain that no one had opened the cans after they were locked and sealed; that the milk cans were brought from Antonio Olivieri's dairy.

Asked whether he knew that Juan Casiano had been accused jointly with Ortiz, the district attorney intervened and admitted that Casiano was traveling in the bus, that he was accused and convicted of the same crime.

Upon being further· questioned by the district attorney, the witness testified that the wagon stopped on Park Street, in San Germán, in front of the milk-stall of Conchita Montalvo, that the milk cans were unloaded and taken into the stall, and the samples were taken within the stall.

That was all the evidence for the prosecution. Alleging that the same was insufficient to find him guilty, the defend-

ant moved for his discharge and the court decided his petition as follows:

"Court: Under the circumstances there is no other alternative for the court but to deny this motion. The crime of adulteration of milk is like the majority of those crimes wherein no intention is needed. What is required is the fact. The law is hard but is the law. There is no doubt, or rather, there has been sufficient evidence for the court to believe that there is a case against the defendant. It has been shown that he has transported adulterated milk; so that the fact that there has been another person who has pleaded guilty of adulterating the milk does not exempt this defendant from liability. This man transported adulterated milk; the same was carried from one place to another. . . .

"Attorney Baigés: But it has not been proved that the milk was to be used for human consumption.

"Court: There has been evidence here to show that the milk wagon stopped in front of the stall and that the cans were unloaded from the wagon and taken into the stall. It is enough that the milk be found at a public stall to conclude that it will be used for human consumption."

The defendant took the stand in his own behalf. He testified that he was the chauffeur of a milk wagon belonging to the Blue Ribbons Dairies which carried milk from Guánica to Mayagüez, taking it from several dairies in milk cans locked and sealed with the name of the dairy; that the cans were put in the wagon by an employee of the dairy; that he had no authority to investigate the contents of the milk cans; that the offices of the Blue Ribbon Dairies are in Mayagüez and that the milk cans examined were delivered to him sealed and locked at the dairy of Antonio Olivieri, situated in the Ward Palmarejo of Lajas.

The evidence for the defendant ended with the production of an affidavit of Juan Casiano, admitted without any objection on the part of the district attorney, wherein deponent stated that it was he who through inadvertence caused the adulteration of the milk carried by Emilio Cotis in the present case.

The appellant maintains in his brief that as it has not been shown that he committed the crime charged in any of its modalities, the judgment of conviction entered against him should be reversed and his discharge ordered. He bases his contention largely on the decisions of this Court in *People* v. *Cedrés*, 41 P.R.R. 112 and *People* v. *Vidal*, 44 P.R.R. 502.

The defendant Cotis was charged with transporting adulterated milk for human consumption, a fact which constituted a crime under the law. It was unnecessary to show that he made the adulteration.

■ And the circumstance that the other person who was jointly accused with him of the transportation pleaded guilty to the adulteration, does not exempt him from liability for carrying the milk. This is plain.

■ The evidence of transportation is conclusive. This fact is admitted by the defendant and appellant himself. That the milk was to be used for human consumption is presumed from the fact that the milk cans containing the same were unloaded at the milk-stall of Mrs. Montalvo in San Germán. *People* v. *Bauzá*, 34 P.R.R. 319. *People* v. *Pérez*, 23 P.R.R. 871.

It is maintained that the defendant and appellant knew nothing and could know nothing as the milk cans were locked and sealed and to that end the cases of Cedrés, *supra*, and Vidal, *supra* are cited.

In the first of said cases stress was laid on the fact that Cedrés was not transporting the milk from the several dairies to be used for human consumption "but to be delivered to the person to whom it was consigned, who could do with it as he pleased." Here the defendant Cotis not only transported the milk but also left it at a milk-stall dedicated to the sale of milk for human consumption. In the case of *Vidal, supra,* in the syllabus it was held that "Where a person purchases adulterated milk and transports it from a farm to the shop of his employer, and *it does not appear that while*

*transporting it he had the intention of causing the milk to be used for human consumption,* he is not guilty of the crime of transporting adulterated milk to be used for human consumption.'' (Italics ours.) There the situation was different.

Defendant's testimony instead of improving his situation, made it worse. The district attorney maintains in his brief that what it shows is that the defendant acted beyond the scope of his employment by becoming an accessory to Casiano in the sale made by the latter at the milk-stand in San Germán. Perhaps he is right.

The appeal will be denied and the judgment appealed from affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.